ROGREN *v.* CORWIN.

HIGHWAYS AND STREETS—EMINENT DOMAIN—PUBLIC NECESSITY.
   The objection that a road is open at one end only, is not, as a matter of law, conclusive on the issue of public necessity, in proceedings to lay out a highway. If there is evidence for and against the necessity of the way and the convenience to the public, the issue is for a jury under proper instructions; nor is it essential that the highway should be indispensable or imperative to the public. No statute or rule of law determines that before a public highway can be laid out it must have certain and definite *termini* in other public highways.

Error to Wexford; Lamb, J. Submitted April 30, 1914. (Docket No. 60.) Decided June 1, 1914.

Proceedings by James Whaley, highway commissioner, to lay out a highway. On appeal by Mary Corwin, one of the defendants, to the township board, the judgment of said commissioner establishing such highway was reversed and Enoch Rogren, one of the petitioners, appealed to the circuit court. Judgment for petitioners. Defendant Corwin brings error. Affirmed.

*Howard F. Withey,* for appellant.

*E. F. Sawyer,* for appellee.

MOORE, J. In March, 1911, a petition was filed with the highway commissioner for the laying out of a highway. The plat will help to explain the situation.

The necessary notices were given, and a hearing had, and the highway commissioner found that the proposed highway was a public necessity, and awarded damages. The defendant appealed to the township board, which board reversed the decision of the highway commissioner, and an appeal was then taken to the circuit court. The case was tried by a jury. It was shown that the village of Hobart was a railroad station, and that in the village were the schoolhouse, postoffice, and a store. Testimony was taken pro and con in relation to the public necessity of establishing the highway as proposed. At the close of the testimony it was agreed between counsel, in open court, that the issue before the jury should be restricted to the question as to whether there was or was not a public necessity for the opening of the proposed highway; all question as to the sufficiency of the award of damages being excluded. No written requests to charge were offered to the judge. The charge was oral and somewhat lengthy. It was in part as follows:

"However, the case is now here for your determination just as though it had never been determined before. You are to try it as though no one had ever passed upon it before, and you are to pass upon it from what you have heard in this court, and upon that alone.

"Now, under the admission of the parties, there is just one question for you to determine, and that is the sole and only question, whether this proposed highway is necessary, that is, is it a public necessity.

"Now, a public necessity does not necessarily mean that it must be absolutely necessary for the public, but, in other words, within reason, is the public interested in it. Now, if it is, and the testimony from the witness stand has convinced you that this piece of road is brought within that definition, then it would be your duty to say so by your verdict; if, on the other hand, you are not satisfied by a fair preponderance of the evidence that the public is interested in this road or highway, such as to make it necessary if laid

out, then it would be your duty to so find on that proposition. This is simply and solely a question of fact, and can only be determined by the evidence in the case, and in determining that question of fact, as I have said to you before, you are to weigh the testimony of the witnesses and consider their interest or lack of interest in the matter, and whether their testimony is consistent or not; whether it is reasonable or not. You are to use your own judgment in those matters in the light of the testimony. * * * I will say to you, as a matter of law, and that is practically the only law there is in it, that it is not necessary from a public standpoint that a road have two ends, in other words, that there is such a thing as having a public highway leading out, opening upon one highway, but being blind at the other end; but you are to determine from the testimony whether such a road as applied for would be of interest to the public to such an extent that it would be a public necessity, so that it all comes back to the question of fact to be determined from the evidence in the case. Now, there is another question; it has been suggested that there was another way that this man might get out. Well, as I view the matter, that makes no particular difference whether there was another way. The question is whether this way is a public necessity. Is it necessary to have this way opened up, and has it been shown by the witnesses on the witness stand here that it is a public necessity? Now, public necessity is distinguished from a private necessity. If the public is interested in this road to such an extent that it makes it necessary to open it up, then it is necessary from a public standpoint. If the only person interested in it is a private individual, then there is a private necessity only, so you can see that there is a wide range between a private necessity and a public necessity, and it still leaves it to you as a question of fact, to be determined from the evidence here on the witness stand, whether or not the testimony in these proceedings has brought it within the definition of a public necessity."

At the close of the oral charge the record shows the following:

"*The Court:*  Anything further, gentlemen?
"*By Mr. Withey:*  No, sir.
"*By Mr. Sawyer:*  No, sir."

The jury found that the proposed highway was a public necessity. The case is brought here by writ of error.

Counsel say the court did not correctly charge as to what constituted public necessity, and that the testimony did not establish public necessity within the meaning of the law, and the court should have directed a verdict in favor of defendant.

Counsel for appellant cite many authorities. We shall not analyze all of them; but we have examined them and find none of them controlling of the instant case. One of the authorities cited is *Varner* v. *Martin,* 21 W. Va. 534. In that case the commissioners had established a private way having gates at each end, and not thrown open to the public, and it was held that the statute under which they were acting was unconstitutional. We quote:

"There is an entire concurrence of all the authorities in the proposition that private property cannot be taken for private use, either with or without compensation. A few of the many authorities in which this proposition is laid down as unquestionable law are here cited."

And then followed many citations.

The opinion is a very long one, and in it the difference between a public way and a private way is discussed. Some of the language is pertinent here:

"As then the only real inquiry in this or in any other case where the constitutionality of an act of the legislature, which authorizes the condemnation of land, is simply whether the use for which the private property is authorized to be condemned is a public use or only a private use, we will now inquire into the elements which the courts have held enter into and constitute a public use as distinguished from a private use of property. This, it will be found, depends

largely upon whether the property condemned is under the direct control and use of the government or public officers of the government, or, what is almost the same thing, in the direct use and occupation of the public at large, though under the control of private persons or of a corporation; these together constituting one class.   *   *   *

"All agree that, if the road has been established by public authority, and the damages for the condemnation of the land has been paid by the general public, and the road is under the control and management of public officers, whose duty it is to keep it in repair, then it is a public highway, and the legislature may constitutionally authorize the condemnation of land for the route of such a road, though it may have been opened under such act by a county court on the application of a single person to whose house the road led from some public road, and though it may not have been expected when the road was established that it would be used to any considerable extent by any person, except the party for whose accommodation it was opened. This was the character of the case of *Lewis* v. *Washington*, 5 Grat. [Va.] 265.   The court say:

" 'The authority of the county court to establish public roads is a branch of their police jurisdiction, conferred for the benefit of all the citizens of the county, and to be exercised at the common expense out of the resources derived from the county levy.

" 'The use, convenience, and advantage of the public, contemplated by the law, are benefits arising out of the aggregate of such improvements, to which the particular road so established contributes in a greater or less degree. But no limitation upon the power of the court in regard to any proposed road is to be found in the degree of accommodation, which it may extend to the public at large. That is a matter which addresses itself, not to the authority, but the discretion of the court. It cannot be predicated of any particular road that it will be of direct utility to all the citizens of the county. It may accommodate in travel and transportation but a small neighborhood, or only a few individuals. Still when established it may be used at pleasure by all the citizens of the county or country, and the public is interested in the accommodation of all the members of the community.'

"With these views, I entirely concur. The legislature can authorize a county court to open a public highway at the expense of the county, and place it under the control of public officers, whose duty it is to keep it in order, and the fact that the legislature authorized this to be done on the application of a single person, and it was done for his special accommodation, though it might be apparent that such road would be used to but a very small extent by any other person than such applicant, still such act would be constitutional, and such an opening of a public road by the county court would be in the eyes of the law an opening of the road for public use, and a condemnation of land for such a road would be a legitimate exercise of the power of eminent domain by the State. That which distinguishes such a road from a private road or private way we will consider more at large after we have gotten clearer ideas of what constitutes a public use. * * *

" 'But, if a public use be declared by the legislature, the courts will hold the use public, unless it manifestly appears by the provisions of the act that they can have no tendency to advance and promote such public use. Per Shaw, C. J., in *Hazen* v. *Essex County*, 12 Cush. [Mass.] 477. That private property may be constitutionally taken for public highways cannot be doubted, and is not denied. * * * The State may properly provide for the establishment of a public road or highway to enable every citizen to discharge his duties. The State is not bound to allow its citizens to be walled in, insulated, imprisoned, but may provide them a way of deliverance. The State may provide a public highway- to a man's house, or a public highway to coal or other mines.

" 'If the road now in question had been established as a public road under the general road law, as we confess we do not see why it might not have been, there would be in our minds no doubt of its validity, although it does not exceed a half a mile in length, and traverses the lands of but a single owner. For the right to take land for a public road, that is, a road demanded by public convenience, as an outlet to a neighborhood, or it may be, as I think, for a single farmer, without other means of communication, cannot depend upon the length of the road or the number of persons through whose property it may pass.' * * *

"The views which I have expressed are in accord with the views on this subject which have been expressed by the Court of Appeals of both Virginia and West Virginia. Thus, in *Lewis* v. *Washington*, 5 Grat. [Va.] 265, it was decided that under the statute law of Virginia, which is the same as ours, there was no limitation to the power of a county court to establish a public road was to be found in the degree of accommodation which it may afford the public at large. That is a matter which addresses itself, not to the authority, but to the discretion of the court, and that, if the road so established led into a public road, its other terminus might be a private farm or dwelling house. No individual has the right to demand the opening of such a public road for his accommodation. The court say:

" 'It redounds in some degree, to the interest of the public, that all the citizens who compose it should be so accommodated, and there is no principle, upon which the wants and necessities of one individual must be imperatively rejected, which would not be applicable to two, or three, or a dozen, or any given number short of the whole or the greater part of the community.'

"And again:

" 'It appears,' says the court, 'that the road is requisite to enable the applicant to travel to the courthouse of his county and other public places contemplated by law.'

"The road in that case was a public road to all intents and purposes, and was established under the same law and in the same manner with all other public roads. That it is proper to open such a road to the residence of a citizen seems to me clear, as the public have a direct interest in enabling all the members of the community to perform their public duties, which they might not be able to perform if they could not reach the courthouse without trespassing on their neighbor, or if the sheriff or other officer could not go to their houses without committing such trespass."

In the case of the *Commissioners of Parks, etc., of Detroit* v. *Moesta*, 91 Mich. 149 (51 N. W. 903), in an opinion written by Justice Montgomery, occurs the following:

"Complaint is also made of the definition of 'public necessity' employed. The judge charged as follows:

" 'The term "necessary" does not mean that it is indispensable or imperative, but only that it is convenient and useful, and, therefore, if you find that the improvement is useful, and a convenience and a benefit to the public sufficient to warrant the expense of making it, then you may find it necessary.'

"The jury must have understood this charge to mean that, in order to justify a finding of necessity, it must appear that the improvement was a convenience—a benefit to the public of sufficient importance to warrant the public in incurring the expense in making it. This would, under our decisions, constitute a public necessity. *Paul* v. *City of Detroit*, 32 Mich. 119."

In *Fields* v. *Highway Commissioner*, 102 Mich. 449 (60 N. W. 1048), this court declined to disturb the action of the highway commissioner in laying out a highway under circumstances quite like the instant case; the court saying:

"There is no statute or rule of law that expressly determines that, before a public highway can be laid out, it must have certain and definite termini in other public highways."

We discover no reversible error.

Judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.