**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 20, 2005**

CITY OF NOVI,

    Plaintiff-Appellant,

v

No. 122985

ROBERT ADELL CHILDREN'S FUNDED TRUST,
FRANKLIN ADELL CHILDREN'S FUNDED TRUST,
MARVIN ADELL CHILDREN'S FUNDED TRUST,
AND NOVI EXPO CENTER, INC.,

    Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, C.J.

In this land condemnation case where the city of Novi is attempting to take private property to construct a road, the first issue is whether the requirement of a public use, under Const 1963, art 10, § 2, is met when the proposed road will be available for use by the public but will be primarily used by a private entity that has contributed funds to the project. We conclude that such a road does qualify as a public use. The second issue is whether, under MCL 213.56, a court can find the city has abused its

discretion in determining there is a public necessity for the condemnation when the city has not considered alternatives to the taking. We conclude that a failure of the city to consider alternatives was not an abuse of its discretion. Because the Court of Appeals incorrectly decided that the proposed road was not a public use, we reverse that decision. We also find no fraud, error of law, or abuse of discretion in the city's determination that there exists a public necessity to take defendants' property for the proposed project. Accordingly, we remand this matter to the trial court for entry of summary disposition in favor of plaintiff.

I

For many years traffic congestion at the intersection of Grand River Avenue and Novi Road in the city of Novi was a concern to the city because it represented a growing traffic hazard. As early as 1984 a study recommended a "ring road" around the intersection to relieve traffic congestion and provide access to vacant land not fronting on Grand River Avenue or Novi Road. The study also recommended a road, referred to here as the "spur road," from the northwest side of the ring road, that would access industrial establishments that were then accessed from Grand River Avenue. The study recommended the spur road

because the employee traffic from the industries with access on Grand River Avenue was resulting in frequent accidents. The study noted that, but for "the need to resolve [this] critical traffic problem," the northwest quadrant of the ring road project "may have been abandoned altogether."

Wisne Corporation was one of the industrial entities that would be served by the spur road.[1] The new spur road was to traverse property owned by defendants, even though Wisne Corporation owned property that could possibly be used for a new access road. Wisne at one point agreed to pay $200,000 toward the funding of the spur road, and the road was to be named A.E. Wisne Drive.

In August 1998, the Novi City Council passed resolutions declaring the necessity for taking defendants' property for the purpose of creating A.E. Wisne Drive. Plaintiff filed a condemnation complaint in September 1998 pursuant to the Uniform Condemnation Procedures Act, MCL 213.51 *et seq*.

Defendants filed a motion challenging the public purpose and necessity of the taking, pursuant to MCL

---

[1] Wisne Corporation changed ownership and its name several times over the years.

213.56. Defendants claimed that the taking was for the private purpose of benefiting Wisne, pointing out Wisne's financial support for the road and documents referring to the benefit Wisne would receive from the road. Defendants did not deny that the public would use the street. Rather, the thrust of defendants' argument was that the road was planned to primarily serve private entities and that the city wanted to include it in the plans because the funding Wisne agreed to provide would entitle the city to obtain state funding for the rest of the ring road project. Defendants also alleged that the taking was not necessary, and that the city exceeded its authority because the enabling legislation that gave it authority to condemn did not permit it to take property from one private owner and transfer it to another private owner.

In 1999, the trial court held a three-day evidentiary hearing and bench trial, during which a dozen witnesses testified. The parties stipulated that the existing access drive used by Wisne was hazardous and that it was going to be eliminated as a result of part of a bridge improvement

4

project undertaken by the Oakland County Road Commission on Grand River Avenue.[2]

The circuit court concluded that the proposed taking was unconstitutional. The court applied the heightened scrutiny test set forth in *Poletown Neighborhood Council v Detroit*, 410 Mich 616; 304 NW2d 455 (1981),[3] concluding that although the project "further[ed] a benefit to the general public," it benefited a specific, identifiable, private interest, and this private benefit predominated over the benefit to the general public. Although the trial court did not expressly say so, presumably it found that under *Poletown* such a predominant private benefit removed the project from the realm of constitutional, public uses. Without further explanation, the court then held that "Plaintiff City's actions evidence a lack of public necessity by fraud, error of law and/or abuse of discretion," and thus the proposed taking was unconstitutional.

---

[2] Despite eliminating Wisne's access drive, the Oakland County Road Commission did not develop a new access road off Grand River Avenue, relying instead on the access that was to be provided by the planned A.E. Wisne Drive.

[3] On July 30, 2004, *Poletown* was overruled by this Court in *Wayne Co v Hathcock*, 471 Mich 445; 684 NW2d 765 (2004).

In analyzing plaintiff's appeal, the Court of Appeals also relied on *Poletown*, recognizing that it was bound to do so. 253 Mich App 330, 343; 659 NW2d 615 (2002). It noted that both the majority opinion and Justice Ryan's dissent in *Poletown* regarded the concept of public necessity as being separate and distinct from that of public use or public purpose. Although it found that the trial court had erred by conflating the two concepts, the Court found this error harmless because it agreed with the trial court that the private interest predominated over the public interest, making the proposed taking unconstitutional. The Court found the public benefit to be "speculative and marginal" and the private interest "specific and identifiable," primarily to the benefit of Wisne. It affirmed the judgment of the trial court, concluding that, under the *Poletown* heightened scrutiny test, plaintiff failed to show the project was a public use.

We granted the city of Novi's application for leave to appeal after issuing our decision in *Wayne Co v Hathcock*, 471 Mich 445; 684 NW2d 765 (2004). 471 Mich 889 (2004).

II

Under the Michigan Constitution, private property shall not be taken for public use without just

6

compensation.  Const 1963, art 10, § 2.  This provision precludes condemnation of private property for private use, even though some "public interest" may be said to be served by such private use.  *Hathcock, supra* at 472; *Portage Twp Bd of Health v Van Hoesen*, 87 Mich 533; 49 NW 894 (1891).  We review de novo the question whether a proposed taking is constitutional.  *Hathcock, supra* at 455.

The statutes under which plaintiff was proceeding are the Home Rule City Act, MCL 117.1 *et seq.*, and the Uniform Condemnation Procedures Act, MCL 213.51 *et seq*.  The former authorizes plaintiff to condemn private land for boulevards and streets, among other uses, MCL 117.4e, and the latter provides the procedures plaintiff must follow for condemnation.  Defendants' challenge to the proposed taking was made pursuant to MCL 213.56, which allows the owner of the property to be taken "to challenge the necessity of acquisition of all or part of the property for the purposes stated in the complaint" by filing a motion asking that the necessity be reviewed.  MCL 213.56(1).  The statute also provides that when the proposed taking is by a public agency, "the determination of public necessity by that agency is binding on the court in the absence of a showing of fraud, error of law, or abuse of discretion."  MCL 213.56(2).  We review the trial court's factual findings

for clear error, but its legal conclusions are reviewed de novo. *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 106; 649 NW2d 383 (2002).[4]

III

There does not appear to be any dispute that plaintiff, in its charter, has claimed for itself the condemnation powers granted it by the Legislature under the Home Rule City Act. The act authorizes plaintiff to take private property for the purpose of a public road. MCL 117.4e. Defendants also do not question that the ring road part of the project is a public road. The heart of this case is whether the spur road part of the project constitutes a private use requiring rejection of part or all of the road project. Plaintiff asserts that the planned spur road is a public use and that defendants have not successfully challenged the necessity of the project. We agree.

This Court recently clarified Michigan's law concerning public use in *Hathcock, supra*. However, we

---

[4] Cases stating that the trial court's determinations in condemnation cases are reviewed for clear error are correct only to the extent that this standard applies to *factual* findings. See, e.g., *City of Troy v Barnard*, 183 Mich App 565, 569; 455 NW2d 378 (1990); *Nelson Drainage Dist v Filippis*, 174 Mich App 400, 403; 436 NW2d 682 (1989).

8

declined to provide a "single, comprehensive definition of 'public use . . . .'" *Hathcock*, *supra* at 471. We overruled *Poletown*'s heightened scrutiny test because it violates our Constitution, and instead set forth the three-factor test proposed by Justice Ryan in his dissenting opinion in *Poletown*. Under *Hathcock*, when land condemned by a public agency is transferred to a private entity, we do not weigh the relative benefits but instead analyze the facts to see if any of three conditions are met.[5] However, such a transfer of property is not proposed here; the city will retain ownership of the land. Thus, although *Hathcock* informs us that we are not to use *Poletown*'s heightened scrutiny test, it does not provide us with the elements to apply when the public agency retains ownership and control.

Plaintiff urges us to hold that any road project is unquestionably a public use. In *Poletown, supra* at 672, Justice Ryan quoted *Rindge Co v Los Angeles Co*, 262 US 700, 706; 43 S Ct 689; 67 L Ed 1186 (1923), where the United

---

[5] Under *Hathcock*, the transfer of condemned property to a private entity may be appropriate where: (1) "'public necessity of the extreme sort'" requires collective action; (2) the property remains subject to public oversight after the transfer to the private entity; or (3) the property is selected because of "'facts of independent public significance,'" rather than the interests of the private entity receiving the property. *Hathcock, supra* at 476, quoting *Poletown, supra* at 674-681 (Ryan, J., dissenting).

States Supreme Court said, "'That a taking of property for a highway is a taking for public use has been universally recognized, from time immemorial.'" However, we agree with defendants that the single fact that a project is a road does not per se make it a *public* road.

In *Rogren v Corwin*, 181 Mich 53, 57-58; 147 NW 517 (1914), we explained that the difference between public and private use in the context of roads

> "depends largely upon whether the property condemned is under the direct control and use of the government or public officers of the government, or, what is almost the same thing, in the direct use and occupation of the public at large, though under the control of private persons or of a corporation . . . ." [Quoting *Varner v Martin*, 21 W Va 534, 552 (1883).]

The *Rogren* Court continued quoting *Varner* for its definition of when a road is a public road and when it is a private road:

> "All agree that, if the road has been established by public authority, and the damages for the condemnation of the land has been paid by the general public, and the road is under the control and management of public officers, whose duty it is to keep it in repair, then it is a public highway, and the legislature may constitutionally authorize the condemnation of land for the route of such a road, though it may have been opened under such act by a county court on the application of a single person to whose house the road led from some public road, and though it may not have been expected when the road was established that it would be used to any considerable extent by any person, except the party for whose accommodation it was opened."

10

[*Rogren, supra* at 58, quoting *Varner, supra* at 554.]

Thus, according to *Rogren*, where the public body establishes a road, pays for it out of public funds, and retains control, management, and responsibility for its repair, the Michigan Constitution allows private land to be condemned for the project, no matter what the proportional use of the road will be by the public or by private entities.

Under the *Rogren* analysis, the spur road proposed by plaintiff is a public use. Plaintiff initiated the project in response to the growing traffic problems in the area. Ownership, control, and maintenance will remain with that public body. The public will be free to use and occupy the spur, and although Wisne may be the primary user of the spur, "[i]t is the right of travel by all the world, and not the exercise of the right, which constitutes a way a public highway." *Road Dist No 4 v Frailey*, 313 Ill 568, 573; 145 NE 195 (1924). Wisne is to be granted no interest in the property and will have no ability to control use of or access to the road. We therefore find the proposed project a public road, and thus a public use.

We do not find the fact that Wisne was expected to contribute to the funding of the road dispositive of the

11

question of public use. "The fact that a private individual pays for the right of way does not change the character of the road." *Id*. at 574. See also 2A Nichols, Eminent Domain (3d ed), § 7.03[5][e], p 7-51. The county's role in the hazardousness of the original driveway, and in its removal, is also not relevant. In sum, when the public body that establishes a road retains ownership and control of it, and the public is free to use and occupy it, that proposed use is a public use.

Therefore, in accord with the characteristics of public use identified in *Rogren*, the project proposed by plaintiff is a public use. The lower courts erred in applying the *Poletown* test to this case because no property interest is being transferred to a private entity and because, even if there were such a transfer, *Hathcock*'s three-factor test would apply, rather than *Poletown*'s heightened scrutiny test.[6]

IV

Defendants also have challenged the proposed taking on the basis of public necessity. It is required pursuant to

---

[6] We note that the Court of Appeals attempted to apply such a test by looking to Justice Ryan's *Poletown* dissent. However, the test applies when there is a transfer of property to a private entity, which did not occur here.

12

MCL 213.56 that there be a public necessity for the taking to be permitted. Specifically, there must be a necessity for the taking "of all or part of the property for the purposes stated in the complaint . . . ." MCL 213.56(1); *State Hwy Comm v Vanderkloot*, 392 Mich 159, 175; 220 NW2d 416 (1974). Yet, pursuant to the statute, the determination of necessity is left not to the courts but to the public agency, which in this case is the city. The only justiciable challenge following the agency's determination is one based on "fraud, error of law, or abuse of discretion." MCL 213.56(2). None of these bases is shown to exist here.[7]

Fraud does not provide defendants a basis for relief in this case because the requisite elements are not supported by the record.[8] Moreover, under the Home Rule

---

[7] We agree with the dissent that we first must review the trial court's decision on this issue for clear error. *Post* at 17. However, the trial court's conclusion that the project was not necessary was clearly based on an erroneous legal theory (i.e., that there was no public use and thus no necessity). Moreover, both parties assured the Court at oral argument that the record was sufficient for us to make a determination on the necessity issue without a remand.

[8] The elements of fraud are: (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with
(continued…)

City Act, plaintiff has the legal authority to condemn this land for a public road, so it has not made an error of law.[9] We are left to review whether plaintiff abused its discretion in determining that plaintiff's property was necessary to complete this project.

An abuse of discretion occurs when an unprejudiced person considering the facts upon which the decision was made would say that there was no justification or excuse for the decision. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761-762; 685 NW2d 391 (2004). Discretion is abused when the decision results in "an outcome falling outside this principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Here, defendants' objections to the necessity of taking their property for the proposed road are based on the assertion that the city

---

(…continued)
the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury. *Scott v Harper Recreation, Inc*, 444 Mich 441, 446 n 3; 506 NW2d 857 (1993). Defendants at most have asserted that plaintiff made "untrue" statements and behaved in an "unseemly" manner. Nowhere does the record show any reliance or injury resulting from these acts.

[9] Defendants claim that plaintiff's condemnation complaint is not supported by appropriate enabling legislation. This claim is based on the assertion that plaintiff is not authorized to take private land for a private use. Because we conclude that the road is a public use, defendants' argument is without merit.

14

never considered any alternatives and that reasonable alternative locations were available. Even if that were so, such facts would not remove the proposed road from the "principled range of outcomes."[10] The city's decision-making process is not what we review; rather, we look at the resulting outcome. The city is not obligated to show that its plan is the best or only alternative, only that it is a reasonable one.[11] The dissent's insistence that plaintiff has the burden of proving necessity is clearly contrary to the deference the Legislature requires of us. The statute not only limits the grounds for reversal and by its language places that burden on defendants, but also

---

[10] Although defendants contend that plaintiff could have built an alternative to the proposed Wisne drive on land actually owned by Wisne, the record indicates that such an alternative would still have exited onto Grand River Avenue. We note in passing that such an "alternative" would likely have defeated the purpose of relocating the access road, because it would have done nothing to eliminate the "critical traffic problem" posed by the exit onto Grand River Ave.

[11] In *Vanderkloot*, *supra* at 172-173, we identified numerous factors that might play a role in determining the routing of a road, including "comparative costs of construction, directness, comparative costs of maintenance, safety, probable amount of travel, convenience, topography, aesthetics, etc." That is why these legislative determinations are entitled to a highly deferential standard of judicial review, and will not be disturbed except where there is evidence of fraud, error of law, or an abuse of discretion.

15

allows only thirty days between when defendants file a necessity motion and when the hearing is held, implicitly limiting discovery on the issue. MCL 213.56. The Legislature adds a final hurdle for defendants by permitting appellate review of the trial court's decision only by leave granted. MCL 213.56(6). Because defendants have not shown that the proposed route of the public road is outside the zone of reasonable alternatives, we find plaintiff did not abuse its discretion in determining that the taking of defendants' property is necessary for the ring road project.

V

In his dissent, Justice Cavanagh sua sponte raises the question of mootness,[12] concluding that the city does not

_____

[12] Where the facts of a case make clear that a litigated issue has become moot, a court is, of course, bound to take note of such fact and dismiss the suit, even if the parties do not present the issue of mootness. "'"Courts are bound to take notice of the limits of their authority, and a court may, and should, on its own motion, though the question is not raised by the pleadings or by counsel, recognize its lack of jurisdiction and act accordingly by staying proceedings, dismissing the action, or otherwise disposing thereof, at any stage of the proceeding."'" *Daniels v Peterson*, 462 Mich 915, 917-918; 615 NW2d 14 (2000) (Kelly, J., dissenting) (quoting *Fox v Univ of Mich Bd of* Regents, 375 Mich 238, 242; 134 NW2d 146 [1965], quoting *In re Fraser Estate*, 288 Mich 392, 394; 285 NW 1 [1939]). Because "'[t]he judicial power . . . is the right to determine actual controversies arising between

(continued…)

intend to pursue this project. To make this argument, he relies exclusively on the colloquy at oral argument. While we do not think that that argument supports his conclusion, which we will discuss below, a brief review of the basic principles of mootness law also shows that it is premature to declare this matter moot.

When a complaint is filed and an actual injury is alleged, a rebuttable presumption is created that there is a genuine case or controversy. See *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 631; 684 NW2d 800 (2004). The case may be dismissed as moot if the moving party satisfies the "heavy burden" required to demonstrate mootness. *MGM Grand Detroit, LLC v Community Coalition for Empowerment, Inc*, 465 Mich 303, 306; 633 NW2d 357 (2001), citing *Los Angeles v Davis*, 440 US 625, 631; 99 S Ct 1379; 59 L Ed 2d 642 (1979). If such a motion is brought, "the plaintiff must further support the allegations of injury with documentation" and must sufficiently support its claim if it goes to trial. *Nat'l Wildlife, supra* at 631.

---

(…continued)
adverse litigants,'" *Anway v Grand Rapids R Co*, 211 Mich 592, 616; 179 NW 350 (1920) (citation omitted), a court hearing a case in which mootness has become apparent would lack the power to hear the suit. This is not such a case.

These procedural requirements are entirely lacking in this case at this time. No motion or other pleading has claimed mootness and there has been no "support" so as to meet *any* burden, much less the "heavy burden" required to demonstrate mootness.

Notwithstanding this, the dissent evidently feels that the record here is sufficient so that we sua sponte can proceed. We think the record cannot support that conclusion. The dissent, relying entirely on the oral argument here, infers that several statements by plaintiff's counsel support a finding of mootness. The essence of the first statement made in response to Justice Corrigan's query about whether the ring road part of the project could be split off was that it could not because plaintiff did not want the project built piecemeal. This does not indicate abandonment; rather, it refers to a desire to consolidate all parts of the project before getting underway. Certainly in the absence of contradictory evidence, of which none has been presented, the draconian reading given by the dissent is unwarranted.

The second claim is that the plaintiff, in rebuttal argument, failed to "contest or deny that there are currently no plans to pursue the project." *Post* at 4. Yet, plaintiff had no reason to respond in such a way

18

because the defense counsel did not say the city had no intention of completing the *spur* road for which defendants' property was being condemned; he merely said the *ring* road project, with its rescinded state funding, was "gone." This appears to be nothing more than a reference to the lapse of funding, which happens invariably when there is extended litigation. With this understanding, a rebuttal would not, for a person conversant with this process, call for a full vindication of continued interest in the whole project. Thus, that one did not come is unexceptional and in no event establishes mootness.

Finally, the dissent faults plaintiff for its response to the defense counsel's observation that the reason plaintiff continued the litigation was because it wants a rule of law reversing the decision of the Court of Appeals. How surprising is it that an appellant would concede that it wanted the Court of Appeals decision reversed? Not very, we believe. Surely it says nothing about mootness.

We conclude therefore that plaintiff's complaint is a matter of current controversy because there is no evidence here presented, indeed only defendants' speculation, that plaintiff would not proceed with the condemnation upon prevailing in this Court. On remand, should the defendants conclude that mootness actually is an issue, they can raise

it in the normal course and let the trial court determine if they have met their burden. Such has not been shown on the record before us, and thus we conclude that this matter is not moot and is appropriate for adjudication.

VI

We hold that the proposed road and spur are for a public use, and therefore the proposed condemnation does not violate Const 1963, art 10, § 2. We also hold that plaintiff's determination that defendants' property is necessary to complete the ring road project does not violate the UCPA because it does not indicate fraud, error of law, or an abuse of discretion. Accordingly, the decisions of the Court of Appeals and the circuit court are reversed, and this matter is remanded to the circuit court for further proceedings not inconsistent with this opinion.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

CITY OF NOVI,

    Plaintiff-Appellant,

v                                   No. 122985

ROBERT ADELL CHILDREN'S FUNDED TRUST,
FRANKLIN ADELL CHILDREN'S FUNDED TRUST,
MARVIN ADELL CHILDREN'S FUNDED TRUST,
AND NOVI EXPO CENTER, INC.,

    Defendants-Appellees.

_____

WEAVER, J. *(concurring)*.

I concur in the majority opinion that the road proposed by the city of Novi is a public use under Const 1963, art 10, § 2 and private property may be condemned for the construction of the road because the road will be established, paid for, and controlled and managed by a public body and because the public at large will be able to use the road. See *Rogren v Corwin*, 181 Mich 53, 57-58; 147 NW 517 (1914).

The majority correctly notes that this case does not involve the transfer of private property through the exercise of eminent domain from one private entity to another and thus is not controlled by this Court's recent decision in *Wayne Co v Hathcock,* 471 Mich 445; 684 NW2d 765

(2004).  But then the majority suggests that the lower courts also erred because if there had been such a transfer, the lower courts should have applied *Hathcock's* three-factor test.  *Ante* at 12.  However, because the lower courts' decisions in this case preceded this Court's decision in *Hathcock,* the lower courts could not have erred by not applying *Hathcock*.  *Id*.

I also concur in the majority opinion that the city of Novi did not commit fraud, an error of law, or abuse its discretion when it declared that the condemnation of the property in question was necessary under MCL 213.56.

Finally, I agree with the majority that the case before us is not moot and that this Court cannot avoid addressing the constitutional and statutory questions presented on the basis of the dissent's assumption that the proposed road project will not proceed.  However, I do not join the majority's purported "review of the basic principles of mootness law . . . . " *Ante* at 17.  The majority does not in fact review Michigan's law regarding moot cases.  Instead, the majority imports a discussion of subject-matter jurisdiction requirements from a case that involved standing.  See *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 631; 684 NW2d 800 (2004).  As I stated in my opinion concurring in the result

only in *Nat'l Wildlife*, the cited discussion had little to do with the question of standing that was at issue in *Nat'l Wildlife.* The cited discussion similarly has little relevance to the question whether the issues presented in this case are moot.

Elizabeth A. Weaver

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

CITY OF NOVI,

    Plaintiff-Appellant,

v                                          No. 122985

ROBERT ADELL CHILDREN'S FUNDED TRUST,
FRANKLIN ADELL CHILDREN'S FUNDED TRUST,
MARVIN ADELL CHILDREN'S FUNDED TRUST,
AND NOVI EXPO CENTER, INC.,

    Defendants-Appellees.

_____

CAVANAGH, J. *(dissenting).*

I respectfully dissent from the majority opinion. This matter is moot and, consequently, we are without authority to decide it. With regard to the majority's substantive analysis, the majority erroneously decides a matter that should first be addressed by the trial court. Further, by improperly diminishing the degree of inquiry that should be made into the city's condemnation decision, the majority erroneously concludes that the city's taking met the standard for public necessity.

## I. MOOTNESS

"The principal duty of this Court is to decide actual cases and controversies." *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002),

citing *Anway v Grand Rapids R Co*, 211 Mich 592, 610; 179 NW 350 (1920). "To that end, this Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us unless the issue is one of public significance that is likely to recur, yet evade judicial review." *Id.,* citing *Anway*, *supra* at 610, and *In re Midland Publishing Co, Inc*, 420 Mich 148, 152 n 2; 362 NW2d 580 (1984).

Today the majority grants the city's request for entry of a judgment on its condemnation suit, despite the fact that the relief granted has no practical legal effect on the parties to this claim. The city sued to condemn defendants' land so that it could pursue a particular project. As identified in its condemnation complaint, the city's project involved constructing a ring road and a connecting spur, the latter of which was designed to rest on defendants' property.[1] A review of both parties' statements of facts in their briefs to this Court reveal that the funding for the ring road project was rescinded by the funding agency in 1999. In the briefing, there is

---

[1] The parties' nomenclature for the whole project is the "ring road project." The majority's assertion, *ante* at 19, that plaintiff represented "merely" that the "ring road project" was gone, and this meant that the *spur* road portion is still pending, is not borne out by the facts.

nothing declaring, and nothing from which to infer, that if the city prevails on its condemnation claim, it has the present ability and the present intent to pursue the originally intended project.

At oral argument, this Court made several inquiries regarding the project's status and the potential mootness of this appeal. First, Justice Corrigan asked whether there was any reason why this Court could not issue an order allowing the ring road portion of the project to proceed while the spur portion of the project was still under consideration. Counsel for the city responded:

> We are now, Your Honor, *several years removed from the road project*. This was not a piecemeal kind of project. Part of the reason for the industrial spur, for example was that the Ring Road where it was proposed to connect to Grand River would have been too close to this driveway on Grand River that currently served the Wisne property. That was one of the reasons to have the industrial spur. [Emphasis added.]

Counsel elaborated, "It was difficult at the trial and in addition now, 6 years, 7 years removed from when the project was started, *the project itself has kind of been uncertain*." (Emphasis added.)

During defense counsel's argument, Justice Kelly asked:

> You began to develop an idea and you didn't complete it because you were interrupted. Were

3

you telling us that when Wisne was sold the whole project became uninteresting to the city?

Counsel replied:

It is gone forever and what [counsel for the city] will tell you probably because he has to is that maybe someday it will get built. *The reality of the situation, and there were depositions on this point, that Ring Road is gone. And the driveway that they are proposing now would extend to nothing.* [Emphasis added.]

Interestingly, on rebuttal, counsel for the city did not contest or deny that there are currently no plans to pursue the project. Rather, he attempted to proffer *alternative reasons* why this Court should decide this case:

Very briefly, and I'll stay within the two minutes, the question was raised kind of a mootness kind of question. Here is the city's response on that. It is true that *we have a published Court of Appeals opinion that we think is very much wrong on the issue of public use and what the standard of review is with regard to public use in this kind of case. It's relevant not just for the future and how trial courts are going to apply it, it's relevant to this case with regard to is there a responsibility for the attorney fees that were incurred on behalf of the property owner if that case is not dealt with and found to have been correct or incorrect, so there is a reality for this case that needs to be dealt with.* It's not moot. [Emphasis added.][2]

---

[2] It is not surprising at all that counsel for plaintiff wants this Court to reverse the decision of the Court of Appeals. See *ante* at 19. What is surprising is that counsel for plaintiff offered nothing more than this desire in response to the questions that were raised regarding mootness.

Our jurisprudence regarding mootness has been established for well over a century. There is no question but that a court "'will not take jurisdiction, unless it can afford immediate relief, and certainly will not undertake, where there is no matter in dispute, to *declare future rights.'*" *Anway*, *supra* at 609, quoting *Woods v Fuller*, 61 Md 457, 460 (1884), citing *Heald v Heald*, 56 Md 300 (1881). "'It will never undertake to decide upon and determine a contingency *that may never arise*, unless such determination is necessary for the decision of some immediate relief to be granted, and which the court can enforce by a decree.'" *Id.* at 609-610, quoting *Woods*, *supra* at 460 (emphasis added). "'Where a complainant has sustained no injury and the *object of the action is merely to obtain a declaration as to the constitutionality of a legislative act*, the question presented to the court is merely an abstract one and the action will be dismissed.'" *Id.* at 610, quoting *Hanrahan v Buffalo Terminal Station Comm*, 206 NY 494, 504; 100 NE 414 (1912) (emphasis added).

Counsel for the city expressly stated that relief is sought in this case not because the city intends to pursue the road project, but to overturn what it perceives as an erroneous Court of Appeals opinion and to render guidance

5

for trial courts addressing this issue in the future.[3]  We are constitutionally proscribed from granting declarations of this sort, despite whether the mootness inquiry originates from a party.  See *id.*; see also *Sibron v New York*, 392 US 40, 57; 88 S Ct 1889; 20 L Ed 2d 917 (1968) (recognizing the constitutional genesis of the mootness doctrine).  In many instances, both parties may strongly desire a court ruling, despite the moot nature of the case.  But where the ruling is purely advisory and has no effect on the parties' rights, a court is without jurisdiction to entertain the claim.  Thus, the majority's puzzlement over the dissent's effort to address mootness is puzzling in and of itself.

Although it has been aptly recognized that it "is assuredly frustrating to find that a jurisdictional impediment prevents us from reaching the important merits [of the] issues that were the reason for our agreeing to hear [a] case," it is simultaneously true that we nonetheless "cannot ignore such impediments for purposes of our appellate review without simultaneously affecting the principles that govern district courts in their assertion

---

[3] Such a reading is hardly "draconian."  See *ante* at 18.

or retention of original jurisdiction." *Honig v Doe*, 484 US 305, 341-342; 108 S Ct 592; 98 L Ed 2d 686 (1988) (Scalia, J., dissenting). See also the collection of cases noted in *City of Warren v Detroit*, 471 Mich 941 (2004) (Markman, J., concurring).

The city, having failed to confirm or present any supporting facts that it is currently pursuing the road project for which this taking was ostensibly required, leaves us no choice but to declare that there is simply no controversy remaining and no relief available to the parties. It is unfortunate that the majority does not recognize this. Instead, the majority remands this case for entry of a judgment that the city can condemn defendants' property. But that judgment is meaningless. The basis for the city's condemnation complaint, in which it declared that it required defendants' property for its ring road project, simply no longer exists because the project is defunct. As defense counsel noted, constructing the spur on defendants' property would be an exercise in futility because there is no ring road with which to connect it. Consequently, the trial court will enter judgment on the city's condemnation complaint, but the only effect of that judgment will be that the city will know that, if, at some time *in the future* it decides to pursue

7

the road project, it has a Supreme Court advisory opinion in its favor.

Because of the tremendous restrictions a potential taking puts on a property owner's ability to use or dispose of his land, the city should not get the benefit, and defendants should not get the detriment, of today's ruling. In *Horton v Redevelopment Comm'n of High Point*, 262 NC 306; 137 SE2d 115 (1964), a concurring justice of the North Carolina Supreme Court commented on the appropriateness of requiring a city to show that it has present intent and present ability to begin and complete an urban redevelopment project when the project involves taking private property. The principles espoused in the justice's thoughtful analysis are equally applicable in the case at hand, and bear repeating:

> The urban redevelopment law and the decisions of this Court have given ample notice that the City must show present ability to finance the project. This may be done by the use of funds on hand derived from sources other than taxation, or the City must have the present authority to get the money by means other than by pledging the credit of the City. This is so because the filing of the plan prevents the owner of the property from dealing with it as his own. He cannot improve it, or rent it, or sell it, except at the hazard of being ejected at the will of the Commission. His property is virtually frozen by the plan. The filing of a lawful plan is equivalent to a restriction of the owner's right to use his property as of the date of the taking of any interest therein. The law wisely

8

> provides that authorities may not acquire property until the plan shows financial ability to complete the project. The taking of private property is in derogation of a common law right of the owner, and the act which authorizes the taking must be strictly construed. [*Horton, supra* at 328 (Higgins, J., concurring).]

Likewise in this case, the majority's ill-conceived advisory opinion will place defendants' property in a perpetual state of uncertainty, thus effectively depriving them of their common-law right to use their property as they see fit. Despite that fact, the majority apparently does not feel bound by the well-established principles set out by both the United States Supreme Court and this Court that dictate against reaching the merits of this claim.

The city's request for this Court's legal guidance to combat what it alleges is an incorrect Court of Appeals analysis is an insufficient basis on which to disregard the moot nature of this claim. And because the majority insists on issuing an opinion, its grant of "permission" to the parties to raise this matter before the trial court is too little, too late. Plaintiff gets what plaintiff wants: an advisory opinion from this Court on public use and necessity.

Further, the city's plea for us to decide the matter so that a determination regarding attorney fees can be made is easily rejected. I am unaware of any such exception to

the mootness doctrine. Indeed, such an exception would wholly obviate the doctrine because a party to a moot appeal would invariably advance the argument that a decision is required so that one party can seek attorney fees.

Nor is it dispositive that neither party briefed the mootness issue. Because of the constitutional dimensions of jurisdiction, it is incumbent on this Court to identify and reject moot claims even absent a party's request for us to do so. And it is ascertainable from the existing record that this moot matter, while of arguable public significance, is not susceptible to evading judicial review. While the state funding agency required the city to submit an explanation if the project had not moved forward within two years, and reserved its right to rescind the funding if progress was not being made, rescinding was neither a requirement nor a foregone conclusion.[4] And there is no indication that the agency would have rescinded the funding, rather than granting an extension because of a pending lawsuit, had the city requested such an extension.

---

[4] This is contrary to the majority's assertion that a "lapse of funding . . . happens *invariably* when there is extended litigation." *Ante* at 19 (emphasis added).

10

Thus, there is no sufficient showing that this case is the sort that is "likely to recur, yet evade judicial review."

Moreover, it is worth noting that in its grant application, the city misrepresented that defendants had *agreed to donate* the property on which the spur road would be built. By misrepresenting defendants' intention, the city became entwined in a self-created dilemma. It had to sue for condemnation to fulfill what it alleged was already true, i.e., that property had been donated by the community, and, at the same time, avoid exhausting the funding agency's patience. Rather than giving the city the benefit of the doubt that, by virtue of a *possible* time limitation, this case is likely to evade review, I would simply suggest that a taking entity has any number of alternative options available to it. For instance, it could first condemn property and *then* apply for project funding. Or it could forthrightly inform the agency that condemnation is being pursued so the agency would be aware that the lawsuit may bear on the project's timing. But the city cannot, as the majority will apparently allow, place itself, by misrepresentation, in its present predicament and obtain judgment on the merits where it has made no showing that it would otherwise be continually precluded from doing so.

11

With respect to the majority's statement that defendants have come up with no evidence that the project is not moving forward, I would simply point the majority to the documentary evidence contained in the record, which consists of letters discussing the funding withdrawal for the road project. I believe that evidence, coupled with the statements made at oral argument, should give the majority pause.

Because I believe that the existing record demonstrates that there is no present case or controversy, no meaningful relief to be afforded the parties, and no showing that this matter is likely to evade judicial review, and because the inevitable result of deciding the claim is to shackle defendants' ability to freely use their land, I would decline to exercise jurisdiction and dismiss the city's claim as moot.

## II. PUBLIC NECESSITY

Because the majority insists on addressing the merits of this moot claim and rendering an advisory opinion that will now control the state of the law, I find it incumbent on me to respond to its analysis.

The majority correctly recognizes that a trial court's realm of permissible inquiry in a condemnation case is limited to whether a taking entity's decision regarding

12

public necessity was based on fraud, an error of law, or an abuse of discretion. MCL 213.56(2). The Court of Appeals reviews the trial court's determination regarding public necessity for clear error. *City of Troy v Barnard*, 183 Mich App 565, 569; 455 NW2d 378 (1990); *Nelson Drainage Dist v Filippis*, 174 Mich App 400, 403; 436 NW2d 682 (1989). Likewise, this Court may only reverse a decision of the Court of Appeals if we find the decision clearly erroneous. MCR 7.302(B)(5). Thus, it is our task to determine whether the Court of Appeals clearly erred in affirming the trial court's decision.

Although the trial court concluded its written opinion by stating that defendants "met their burden of showing that Plaintiff City's actions evidence a lack of public necessity by fraud, error of law and/or abuse of discretion," the substance of its opinion demonstrates that it analyzed not public necessity, but public use. The paragraph preceding the trial court's conclusion summarized the basis for its ruling:

> The Court does not dispute the fact that the project proposed by the City of Novi furthers a benefit to the general public. Nonetheless, the Court is persuaded that Plaintiff City's proposed action will benefit a specific, identifiable private interest and, therefore, the Court is compelled to inspect with heightened scrutiny as outlined by the Michigan Supreme Court in *Poletown Neighborhood Council v Detroit*, 410 Mich

13

616 [304 NW2d 455] (1981). The question thus becomes whether the public interest is the predominant interest being advanced; the public benefit of which can be neither speculative nor marginal, but clear and significant. *Id.* at 635. Applying heightened scrutiny to the overwhelming evidence before this Court, the Court finds that the proposed industrial spur, A.E. Wisne Drive, is primarily for the benefit of Wisne, which benefit predominates over those to the general public.

Thus, the trial court, despite erroneously citing the standard of review for a public necessity challenge, found that the city had not demonstrated that its condemnation was for a public use. Having found so, it was unnecessary for the trial court to inquire into public necessity. Likewise, the Court of Appeals focused solely on public use. Consequently, this Court is without the benefit of any lower court findings on public necessity.[5]

Therefore, were this case not moot, I would first agree with the majority that the Court of Appeals holding that the taking was for a public use was clearly erroneous for the reasons the majority states. But I would then remand this case to the trial court and instruct it to address defendants' claim that the city's determination of

---

[5] The fact that the trial court based its decision regarding public use on an erroneous legal theory, see *ante* at 13 n 7, does not negate the fact that the trial court made no findings regarding public necessity.

14

public necessity was made on the basis of fraud, error of law, or abuse of discretion.

I would not foreclose defendants' argument regarding fraud on the basis that defendants showed no "reliance or injury resulting from these acts." *Ante* at 14 n 8. A trial court cannot accept the taking entity's assertion of public necessity when that *assertion* was fraudulently made. The record shows that plaintiff submitted a grant application misrepresenting that defendants donated their property toward the project. On the basis of that misrepresentation, the state pledged the funding. When the state granted the funding, plaintiff then had no choice but to condemn defendants' land. And in pursuit of the condemnation, plaintiff claimed that the taking was "necessary." But plaintiffs' assertion of necessity was not grounded in a decision that the land in question was "reasonably suitable and necessary" for the project and that this particular piece of property, rather than some other, was required. See *State Hwy Comm v Vanderkloot*, 392 Mich 159, 176-177; 220 NW2d 416 (1974). Its assertion was

made because plaintiff had to make good on its misrepresentation.[6]

Last, I wholeheartedly disagree with the amount of deference the majority affords the government in determining that the taking of a particular piece of property is necessary. As stated, the precise legal question is whether, to complete the project, the government needs all the property involved or needs one particular piece of property rather than some other property. *Vanderkloot, supra* at 176-177. That review encompasses variables such as "whether the land in question is reasonably suitable and necessary for the 'improvement' and whether there is the necessity for taking particular property rather than other property for the purposes of accomplishing the 'improvement.'" *Id.* at 177-178. Necessarily, then, there must be some factual demonstration that would allow a court to determine whether an agency abused its discretion in condemning a particular piece of property.

---

[6] Defendants need not claim that plaintiff directly defrauded *defendants*. Such a task would be difficult in a condemnation case, in which a decision regarding necessity is presumably made before a private property owner even knows of a looming condemnation. Rather, a trial court must determine whether a plaintiff's assertion of necessity was, in a general sense, fraudulently made.

With regard to public necessity, the majority's first analytical error is in failing to properly apply the clear error standard. *City of Troy supra* at 569; *Nelson Drainage*, *supra* at 403. Where the trial court did not reach the issue of necessity, it is impossible to determine whether its nonexistent findings were clearly erroneous, despite whether the parties believe that the record is sufficient for us to do so.[7]

In its next analytical error, rather than actually assessing whether the facts demonstrate that the city even undertook a necessity analysis, the majority concludes that even if there were other suitable locations for the spur, the decision to take defendants' property was not outside the "'principled range of outcomes.'" *Ante* at 14, quoting *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). But defendants presented evidence that the city did not examine *any* range of outcomes, but rather fixated on this particular piece of property to the exclusion of considering other parcels or even alternatives to condemnation.[8] Thus, a conclusion that the city's outcome

---

[7] See also n 8 of this opinion.

[8] The majority's suggestion that one of defendants' proposed alternatives—building the spur road on Wisne's own
(continued…)

17

fell within an acceptable "range" is unsupportable. The majority's overly deferential viewpoint permits a city to prevail against a challenge to public necessity by simply claiming that its taking of a particular piece of property was, in fact, necessary. While deference to a taking agency's finding is certainly warranted, it cannot be said that as long as an agency claims necessity, its decision cannot be disturbed. Such an approach does not venerate the constitutional principle on which the UCPA is based: a taking can only occur on proof that the taking was both for a public purpose and that *the taking of a particular piece of property was truly necessary*.

This is especially true here, where defendants presented evidence that, during the negotiation phase, they proffered several alternatives to taking their property. The city refused those avenues because to be eligible for the funding it sought, some portion of the ring road

_____

(…continued)
land—was unworkable because the spur still would have exited onto Grand River is not useful to resolving the abuse of discretion claim. As an initial matter, without knowing the logistical details, I would not make a factual determination that the alternative was unworkable. But even if the alternative would not have sufficed, defendants offered other alternatives as well. Invalidating one alternative says nothing about whether other alternatives were available, viable, and preferable to the drastic measure of condemnation.

project had to consist of a "community donation."  The city decided that to fulfill the community donation portion, it would simply require defendants to unwillingly sacrifice their land.  Thus, the city never answered the question whether *the particular piece of property was necessary* for the purposes stated in its complaint, i.e., safety and welfare.  Rather, it is clear only that the taking was a "necessary" means to an end.

The majority further states that "[t]he city is not obligated to show that its plan is the best or only alternative, only that it is a reasonable one."  *Ante* at 15.  Again, a taking agency's mere claim that the choice was "reasonable" is not conclusive.  When defendants challenged public necessity, they put forth evidence that there were alternatives to taking their particular piece of property.  Other than a road project plan that incorporated defendants' property, nothing in the record demonstrates that the city chose defendants' property in lieu of other alternatives because other alternatives were inferior, or because there were no available alternatives.  Thus, the city's assertion of public necessity is bare.  If it is enough for the city to say that it needs a particular piece of property and that its choice is a reasonable one, judicial review of public necessity is essentially

19

foreclosed, and an abuse of discretion could never or only rarely be found.

Under the majority's rationale, a necessity hearing hardly seems meaningful. The majority accuses my dissent of reversing the burden of proof, but nothing could be further from the truth. If the city is required to do no more than sit back and assert public necessity, what, then, is the hearing's purpose? Generally, in civil matters, one party begins with the burden of proof and must present evidence in support of its position. The other party must then somehow diminish, rebut, or contest that evidence with evidence of its own. Only then can a trial court decide which party should prevail under the appropriate standard. But the majority's position allows the following scenario. A property owner disputes public necessity and requests a hearing. At that hearing, the owner puts forth evidence that, if believed, would support his claim that the taking of his particular parcel was not necessary. The taking entity rebuts the allegation not with evidence, but merely by affirming that the taking was necessary. Under the novel rule of law set forth by today's majority, the taking entity prevails, despite the fact that it produced nothing more than an unsupported assertion of public necessity.

This unquestioning ceding of power is not what was contemplated by the constitutional or statutory prohibitions against the unnecessary taking of private property. Contrary to the majority's position, a reviewing court has an obligation to determine whether, in the face of evidence to the contrary, the taking entity produced *evidence*—not assertions—of necessity. And this is true despite the fact that the burden of disproving necessity is on the property owner. When a trial court must determine whether there was an abuse of discretion, defendants raise a compelling argument that the taking entity's failure to use any discretion at all is, in itself, an abuse of discretion.

Were this case not moot, in the complete absence of trial court findings on necessity, I would remand for the trial court to determine whether the city's decision to take defendants' property was based on fraud, error of law, or an abuse of discretion.

### III. CONCLUSION

The doctrine of mootness should preclude this Court from reaching the merits of this claim. As such, the city's appeal should be dismissed. Moreover, the majority's public necessity analysis dilutes the power and obligation of a reviewing court to protect a private

21

property owner from an unlawful taking by conferring unchecked deference on a taking entity's declaration of necessity.  Accordingly, I dissent.

Michael F. Cavanagh
Marilyn Kelly
